Action by Jacob Sohlman against the Cluny Art Embroidery Company. From a judgment of the Municipal Court of the City of New York, entered upon a verdict rendered in favor of the plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before SEABURY, LEHMAN, and GERARD, JJ.

George Malraison, for appellant.

Michael V. Rosenberg, for respondent.

LEHMAN, J. The plaintiff sues for damages for breach of contract of employment. His testimony is full of inconsistencies and improbabilities, yet, if the record showed that the jury had agreed that he was telling the truth, I should be averse to disturbing their verdict. I believe, however, that they did not agree, and that their verdict represents only a compromise. They first returned and announced a disagreement. They were sent out to consider the case further, and again returned, and the foreman announced: "We agree to half of the amount for the plaintiff, that he claims." When polled, however, the sixth juror stated that "it is not entirely settled." The trial justice sent them out again, and they returned and announced that their verdict was, "Half of the wages for plaintiff." In view of these facts, as well as the unsatisfactory nature of the testimony, a new trial seems required in the interest of justice.

Judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

SUTTON v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1911.)

MASTER AND SERVANT (§§ 286, 289*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE—JURY QUESTION.

    In an action by the administrator of a brakeman, evidence of the defendant's negligence and the deceased's freedom from contributory negligence held sufficient to go to the jury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050, 1089–1132; Dec. Dig. §§ 286, 289.*]

    McLennan, P. J., and Robson, J., dissenting.

Action by Robert Sutton, as administrator of the estate of Edward Sutton, deceased, against the Erie Railroad Company. On exceptions from an order denying a motion for new trial after nonsuit, directed to be heard in the Appellate Division, a new trial was awarded.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Leggett & Thibaudeau and Eugene M. Ashley, for plaintiff.

Moot, Sprague, Brownell & Marcy and John W. Ryan, for defendant.

WILLIAMS, J. The exceptions should be sustained, and the motion for a new trial granted, with costs to the plaintiff to abide event.

The action was for negligence. The deceased, at the time of the accident, was a brakeman in the employ of the defendant, and had been for four months. He was a member of a yard engine crew at Suspension Bridge. The accident occurred at about 10 o'clock of a dark night, on a track used for switching cars and making up trains. No one saw the accident. Deceased was found right after it, his body cut in two. He had charge of two cars running along, and it was his duty to go upon one of the cars and hold them by the brake, so they would come slowly against the cars in the train to which they were to be attached. His associate brakeman was upon another moving car upon the same track. He saw deceased's lantern upon one of the two cars, but he did not see deceased himself, and could not see which of the two cars the light was upon. His car ran up against the southerly of deceased's two cars, and he could not tell whether his car or one of deceased's ran over him. He thought the lantern was on the northerly car. This was the only direct evidence as to the accident itself, or how it happened. The administrator, the father of deceased, a car repairer in defendant's employ, went to the yard the next morning early, and examined the two cars the deceased had charge of, and found a defective brake upon the northerly car on the end next the southerly one, and the roof of the car near it decayed and loose, so that the brake was in an unsafe condition. He also found blood on the wheels of the south car. The particulars of the defective condition of the brake need not be particularly described for the purposes of this appeal. The father testified that the brake would not work properly—would swing out by reason of its defective condition and the condition of the roof of the car.

The nonsuit was granted, not because of a failure to show defects existed in the condition of the brake and car which might have caused the accident, if the deceased was using the brake and in so doing was thrown or fell from the car, but upon the ground that there was no sufficient evidence that deceased was handling the brake and was exercising proper care in so doing. I think the nonsuit was improperly granted—that the case should have been left to the jury. The only question is whether, from the circumstances proven, the jury might have inferred that the deceased was operating the defective brake, that the defect caused the accident, and deceased was free from contributory negligence. It was his duty to go upon the top of the cars, and use a brake to hold the cars. His light did go up, and the inference might well have been made that he went with it, though in the darkness his associate could not see him. It being his duty to use a brake, the inference would have been fairly drawn that he did use one. The inference that he used the defective brake, and not a perfect one, and that the accident resulted from such defect, might have been drawn from the facts that it was not a stormy night, that the car tops were not, therefore, slippery, and that he was young, and active and experienced in the work, and would not have been likely to slip off the car or fall, while operating a perfect brake, and he would have been more likely to fall or be thrown off by using the defective brake.

As to contributory negligence, the night was dark, he would not be

likely to know or discover that the brake was defective, and he had a right to rely more or less upon the assumption that the brakes on the cars were free from defects.   He would not have been expected to examine the brakes in the darkness, to see whether they were defective or not.¹   Many cases have been cited by counsel, which bear more or less upon the question of inferences, in the absence of direct evidence, and in death cases.   I do not regard it as necessary to discuss them in this opinion.   No two cases are alike.

I think this is one where inferences might have been drawn which would have authorized a verdict for the plaintiff.   All concur, except McLENNAN, P. J., and ROBSON, J., who dissent.

---

QUARANTIELLO v. GRAND TRUNK RY. CO. OF CANADA et al.

(Supreme Court, Appellate Division, Fourth Department.   May 3, 1911.)

1. PLEADING (§ 229*)—AMENDMENT—APPLICATION—REASONS FOR AMENDMENT.

> While the power to permit amendments on proper application should be freely exercised in furtherance of justice, amendments should only be allowed when some reason for granting the application is shown, or some excuse is made for failure to put the pleadings in proper form within the statutory period.
>
> [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 591; Dec. Dig. § 229.*]

2. PLEADING (§ 238*)—AMENDMENT—AFFIDAVIT—REASONS FOR AMENDMENT —NECESSITY OF AFFIDAVIT.

Appeal from Special Term, Niagara County.